[No. E006573. Fourth Dist., Div. Two. Oct. 29, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
EDITH MAE BURNES, Defendant and Appellant.

COUNSEL

Bryan C. Hartnell, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Steven H. Zeigen, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

TIMLIN, J.—Defendant was convicted on pleas of guilty to two counts of possessing a controlled substance for purposes of sale. Defendant appeals from the sentence imposed with respect to those convictions.

### FACTS

By information, defendant was charged with the following criminal counts: Count I, conspiracy to sell methamphetamine (Pen. Code, § 182, and Health & Saf. Code, § 11379); count II, possession of cocaine (Health & Saf. Code, § 11350); counts III and VI, possession of marijuana for sale (Health & Saf. Code, § 11359); count IV, possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)); count V, possession for sale of methamphetamine (Health & Saf. Code, § 11378); count VII, possession for sale of cocaine (Health & Saf. Code, § 11351); and count VIII, possession of a silencer device for a firearm (Pen. Code, § 12520).[1] Counts II, III and IV were attended by the special enhancement allegation that defendant had committed the charged offenses during her release from custody on bail while pending trial on another felony offense (§ 12022.1). Count V was

---

[1] Unless otherwise specified, all statutory section-number citations refer to the Penal Code.
This last charge (possession of a silencer) was later dismissed pursuant to a ruling on a section 995 motion.

attended by the special enhancement allegation that defendant possessed for sale methamphetamine in excess of 28.5 grams (§ 1203.073, subd. (b)(2)).

Pursuant to a plea bargain, defendant pled guilty to counts III and V. Defendant also admitted the special enhancement allegations that attended those two counts. Counts I, II, IV, VI and VII were dismissed, but a *Harvey* waiver was taken with respect to the charges contained in counts VI and VII.[2]

Originally, defendant was sentenced to a total term of four years and eight months in state prison. Defendant appealed from her conviction on the ground that certain evidence obtained by the arresting officers should have been suppressed (§ 1538.5). This court affirmed defendant's conviction in full.

Thereafter, the trial court recalled its sentence pursuant to section 1170, subdivision (d). At the new sentencing hearing, the trial court once again denied probation and then turned its attention to the calculation of an appropriate prison sentence. After considering the various sentencing factors present in the case, the trial court concluded: "Therefore, I will choose as the base term Count III, of the Health and Safety Code, 11359, and the Court in weighing the aggravating and mitigating factors will find the factors in mitigation do preponderate and outweigh the factors in aggravation and, therefore, I'm going to impose the lower term of 16 months as to Count III, as the principal term in this case." The trial court then determined to enhance the 16-month base term with a 2-year sentence enhancement pursuant to section 12022.1—and declared the resultant 40-month term to be "the principal term." Finally, the trial court determined to impose a concurrent two-year term for the conviction on count V, bringing the intended aggregate term of imprisonment to three years and four months.[3]

Before the trial court pronounced sentence in accordance with its determinations, however, counsel for the People noted that the court's intended sentence seemed to violate the "double the base term" limitation set forth in section 1170.1, subdivision (g).[4] The trial court agreed. Upon reconsideration, the trial court concluded: (1) That it was without authority to stay

---

[2] *People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396].

[3] Whatever other problems this intended sentence might have had, the aggregate term of three years and four months met the one explicit limitation which section 1170, subdivision (d), places on a court's resentencing power—that the new sentence be "no greater than the initial sentence."

[4] Hereinafter, the "double the base term" sentencing limitation set forth in section 1170.1, subdivision (g), will be referred to as the DBT sentencing limitation.

any portion of a two-year section 12022.1 enhancement; (2) that section 12022.1 enhancements are subject to the DBT sentencing limitation; and (3) that the base term to be selected must therefore be a middle term of two years. With all of this in mind, the trial court then imposed sentence as follows: A two-year middle term on count III was selected as the base term; a two-year middle term on count V was imposed concurrently to that imposed on count III; and a two-year enhancement was imposed on the base term pursuant to section 12022.1. Thus, defendant was (re)sentenced to an aggregate term of four years' imprisonment.

On appeal, defendant contends that the trial court prejudicially abused its sentencing discretion in deciding that it could not impose a mitigated 16-month term on count III as the base term in accordance with its findings as to mitigating and aggravating factors. This contention is twofold in nature: (1) Section 12022.1 enhancements are arguably not subject to the DBT sentencing limitation; and (2) even if section 12022.1 enhancements are subject to the DBT sentencing limitation, the trial court could (and should) have simply stayed that portion of the section 12022.1 enhancement that exceeded the mitigated base term. In response, the People have taken the position that section 12022.1 enhancements are not subject to the DBT sentencing limitation and that the trial court, consequently, did have the discretion to impose a mitigated 16-month term on count III as the base term together with a full 2-year enhancement under section 12022.1.

Defendant has asked us to remedy the perceived sentencing error by simply reversing the judgment. The People, on the other hand, have asked us to remand the matter to the trial court for resentencing. As we discuss below, we conclude that sentencing error did occur in this case but that neither a reversal nor a remand for resentencing constitutes an appropriate remedy. Rather, we conclude that the matter before us is best resolved by simply modifying the judgment so as to correct the sentencing errors committed by the trial court.

Additional facts will be referred to, as needed, in the discussion which follows.

### Discussion

A resolution of the matter before us requires that we analyze the interplay between (1) the "on bail" enhancement provisions of section 12022.1, (2) the DBT sentencing limitation, (3) the provision of article I, section 28, subdivision (f), of the California Constitution that a "prior felony convic-

tion" can be used "without limitation" for sentence enhancement purposes,[5] and (4) the consecutive term sentencing provisions of subdivision (a) of section 1170.1.[6]

*A: "On Bail" Enhancements and the DBT Sentencing Limitation.*

The first question with which we are faced is whether the two-year "on bail" enhancement of section 12022.1 is exempt from the DBT sentencing limitation—that is, whether a full two-year enhancement can be imposed

---

[5] This constitutional provision was adopted by the California electorate in 1982 as a part of Proposition 8.

[6] In pertinent part, these provisions (as they existed at the time their application to defendant's offenses was first triggered) are set forth below: (1) *Section 12022.1:* "(a) For the purposes of this section only: (1) 'Primary offense' means a felony offense for which a person has been released from custody on bail . . . prior to the judgment becoming final . . . . (2) 'Secondary offense' means a felony offense alleged to have been committed while the person is released from custody for a primary offense.

"(b) Any person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutive to any other term imposed by the court.

". . . . . . . . . . . . . . . . .

"(e) If the person is convicted of a felony for the primary offense, is sentenced to state prison for the primary offense, and is convicted of a felony for the secondary offense, any state prison sentence for the secondary offense shall be consecutive to the primary sentence."

(2) *Section 1170.1, subdivision (a):* "Except as provided in subdivision (c) and subject to Section 654, when any person is convicted of two or more felonies, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same or by a different court, and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term and any additional term imposed pursuant to Section 667.5, 667.6, or 12022.1. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any enhancements imposed pursuant to Section 12022, 12022.3, 12022.4, 12022.5, 12022.6, 12022.7, 12022.8, or 12022.9. The subordinate term for each consecutive offense which is not a 'violent felony' as defined in subdivision (c) of Section 667.5 shall consist of one-third of the middle term of imprisonment prescribed for each other such felony conviction for which a consecutive term of imprisonment is imposed, and shall exclude any enhancements. In no case shall the total of subordinate terms for such consecutive offenses which are not 'violent felonies' as defined in subdivision (c) of Section 667.5 exceed five years . . . ."

(3) *Section 1170.1, subdivision (g):* "The term of imprisonment shall not exceed twice the number of years imposed by the trial court as the base term pursuant to subdivision (b) of Section 1170 unless the defendant stands convicted of a 'violent felony' as defined in subdivision (c) of Section 667.5, or a consecutive sentence is being imposed pursuant to subdivision (c) of this section, or an enhancement is imposed pursuant to Section 12022, 12022.4, 12022.5, 12022.6, 12022.7, or 12022.9 or the defendant stands convicted of felony escape from an institution in which he is lawfully confined."

(4) *Article I, section 28, subdivision (f), California Constitution:* "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court."

pursuant to section 12022.1 notwithstanding the fact that imposing such an enhancement would produce a total term of imprisonment in excess of twice the base term selected by the sentencing court. We conclude that section 12022.1 "on bail" enhancements *are* exempt from the DBT sentencing limitation.[7] In arriving at this conclusion, we begin with an analysis of article I, section 28, subdivision (f), of the California Constitution (hereinafter simply referred to as article I, section 28(f)).

■ Our Supreme Court had occasion for the first time to interpret the meaning and applicability of article I, section 28(f) in the sentence enhancement context in *People v. Prather* (1990) 50 Cal.3d 428 [267 Cal.Rptr. 605, 787 P.2d 1012] (hereinafter, *Prather*). The seminal conclusion reached in that opinion is set forth at page 439, wherein the Supreme Court stated that "general caps or ceilings on overall length of sentence, such as [the DBT sentencing limitation], . . . may not be applied to limit the use of prior felony convictions for sentence enhancement purposes." Consequently, if section 12022.1 "on bail" enhancements are deemed to call for the use of "prior felony convictions" (as that phrase is defined and understood under article I, section 28(f)) for sentence enhancement purposes, such enhancements are exempt from the DBT sentencing limitation. In determining this issue—that is, whether section 12022.1 "on bail" enhancements call for the use of "prior felony convictions" (as that phrase is defined and understood under article I, section 28(f)) for sentence enhancement purposes—we turn once again to *Prather*.

■ *Prather* reminds us that a constitution is " 'necessarily couched in general terms or language, [and thus should] not be interpreted according to narrow or supertechnical principles, but liberally and on broad general lines, so that it may accomplish in full measure the objects of its establishment and so carry out the great principles of government.' " (50 Cal.3d, at p. 439, citing *Amador Valley Joint Union High Sch. Dist. v. St. Bd. of Equalization* (1978) 22 Cal.3d 208, 244-245 [149 Cal.Rptr. 239, 583 P.2d 1281], and quoting *Stephens v. Chambers* (1917) 34 Cal.App. 660, 663-664

---

[7] We recognize, of course, that this conclusion is exactly the opposite of the conclusion we reached on this same issue in *People v. Prather* (Cal.App.—superseded by *People v. Prather* (1990) 50 Cal.3d 428 [267 Cal.Rptr. 605, 787 P.2d 1012]). The Supreme Court did not directly address this issue in its *Prather* opinion, but (as noted in the main text of this opinion) its interpretative analysis of article I, section 28, subdivision (f), of the California Constitution is such that we feel compelled to reverse our position on the matter.

We also recognize that by publishing this opinion we have joined the public "split of authority" as to whether section 12022.1 "on bail" sentence enhancements are subject to the DBT sentencing limitation. In this regard, we agree with the conclusion reached on this issue by the Fifth District in *People v. Vega, ante,* page 506 [273 Cal.Rptr. 684]) and disagree with the conclusion reached on this issue by both the First District and the Third District in published opinions which have since been decertified for publication.

[168 P. 595].) ■ With this interpretative framework in mind, the *Prather* court found that article I, section 28(f) was intended by the electorate "not only to increase the length of sentences served by recidivist offenders *generally*, but also *specifically* to abrogate (with respect to prior-felony-conviction enhancements) statutory 'limitations on overall length of sentences.'" (50 Cal.3d, at p. 436.) The *Prather* court saw this electoral intent as a manifestation of the electorate's "general concern with increased punishment and effective deterrence[, which concern] was to be furthered in part by increasing the total period of imprisonment for recidivist offenders." (50 Cal.3d, at p. 435.) Given all of the above, the *Prather* court concluded that the "underlying purpose" of article I, section 28(f) was "to provide increased terms of imprisonment for recidivist felony offenders." (50 Cal.3d, at pp . 439-440.) Of particular interest here, the *Prather* court found that the need to interpret article I, section 28(f) in a broadly liberal fashion so as to effectuate that provisions's underlying purpose precluded a narrow, hypertechnical definition of the phrase "prior felony conviction." (*Ibid.*)

■ "Recidivism" is nowhere defined in the Penal Code, but its common meaning is very clearly defined by Webster to mean "a tendency to relapse into a previous condition or mode of behavior; [a] repeated relapse into criminal or delinquent habits." (Webster's Third New Internat. Dict. (1961) p. 1895.) This is precisely the sort of behavior addressed by section 12022.1: "The purpose of section 12022.1 is to meet public concern over offenders who are arrested then allowed back on the street a short time later only to commit more crimes." (*People* v. *Lewis* (1986) 185 Cal.App.3d 923, 927 [230 Cal.Rptr. 115]. See also, *People* v. *Warinner* (1988) 200 Cal.App.3d 1352, 1356 [247 Cal.Rptr. 197]: "The legislative intent of section 12022.1 was to punish recidivists with additional penalties.") Thus, the underlying purpose of section 12022.1 is precisely that which underlies article I, section 28(f)—to penalize recidivistic behavior with increased punishment.

■ In light of *Prather*'s directive to give article I, section 28(f) a broadly liberal and commonsense interpretation, and given the fact that the legislative intent underlying section 12022.1 precisely comports with the underlying purpose of article I, section 28(f), we conclude that section 12022.1 "on bail" enhancements are, in essence, "prior felony conviction" enhancements, as that latter phrase is interpreted and defined under article I, section 28(f). While it is true that section 12022.1 enhancements may well be (and oftentimes are) *charged* before there is an actual "prior felony conviction," such enhancements are not *imposed* unless there has been a conviction of both the "primary offense" and the "secondary offense." Thus, section 12022.1 enhancements are never imposed unless the defendant has been convicted of a prior felony as well as a subsequent felony—and, in this

sense, section 12022.1 enhancements constitute "prior felony conviction" enhancements.[8]

Finally, we are aware of the statement made by our Supreme Court in *People* v. *Tassell* (1984) 36 Cal.3d 77, at page 90 [201 Cal.Rptr. 567, 679 P.2d 1], that enhancements authorized by section 12022.1 are "[e]nhancements for prior convictions." While that statement may be something less than an express holding in *Tassell*, it nevertheless serves as additional support for the position we have herein adopted on this issue.

■■ In this instance, the "primary offense" of which defendant was convicted is the possession felony charged in count V of the instant case—an offense for which defendant was arrested on July 26, 1985. The very next day, on July 27, 1985, defendant was released from custody on bail. On March 12, 1986, while criminal proceedings were pending on the "primary offense," defendant was arrested for the possession felony charged in count III of the instant case—the felony which constitutes the "secondary offense" of which defendant was convicted. ■ ■■ ■ ■ A two-year section 12022.1 sentence enhancement may be imposed on defendant without regard to the DBT sentencing limitation.[9]

*B: Consecutive Sentencing Considerations.*

■■ The legislative directive of section 12022.1, subdivision (e), is clear and unambiguous: When a defendant is convicted of a "primary offense" and sentenced to state prison for that crime, and is also convicted of a "secondary offense" and sentenced to state prison for that crime, the two terms of imprisonment are to be served consecutively rather than concurrently. In this case, the trial court failed to abide by this legislative directive and sentenced defendant to serve a term of imprisonment on count V concurrently with the term of imprisonment imposed with respect to count III.

A literalistic interpretation of section 12022.1, subdivision (e), could easily lead one to the conclusion that the prison term imposed with respect to

---

[8] In the interest of clarity, it should be noted that "primary offenses" are not always those of which a defendant is first convicted. "Primary" and "secondary," as those terms are used in section 12022.1, refer to the temporal sequence in which offenses are committed, not to the temporal sequence in which convictions are rendered with respect to the commission of those offenses. A defendant may be convicted of a secondary offense before being convicted of a primary offense. (§ 12022.1, subd. (d).) To the extent that "prior felony conviction" enhancements are understood as including section 12022.1 "on bail" enhancements, then, the word "prior" must be understood as referring to the word "felony" rather than to the word "conviction."

[9] Section 12022.1 enhancements are not, of course, imposed so as to enhance the terms of imprisonment rendered with respect to particular counts. Rather, section 12022.1 enhancements are to be "added just once as the final step in computing the total sentence." (*People* v. *Tassell, supra*, 36 Cal.3d 77, 90.)

the "primary offense" is always to be considered as the base term for consecutive sentencing purposes, while the prison term imposed with respect to the "secondary offense" is always to be considered as the subordinate term for such purposes. Such an interpretation, however, would be inconsistent with the general scope and meaning of the consecutive sentencing provisions contained in section 1170.1. (*People v. Jackson* (1987) 192 Cal.App.3d 209, 218-219 [237 Cal.Rptr. 373].) ■■ Given the fact that section 1170.1 sets forth "the general sentencing scheme for multiple convictions" (*People v. Belmontes* (1983) 34 Cal.3d 335, 343 [193 Cal.Rptr. 882, 667 P.2d 686]), and in light of the fact that a penal provision which is a part of an overall legislative scheme must be construed with an eye to the entirety of the scheme so as to achieve a harmony of the whole (*People v. Waite* (1983) 146 Cal.App.3d 585, 590 [194 Cal.Rptr. 245]), subdivision (e) of section 12022.1 cannot be given the meaning that would be provided by a literalistic interpretation of that statutory subpart. Rather, in imposing consecutive sentences for "primary offenses" and "secondary offenses," a trial court should follow the general sentencing guidelines of section 1170.1 to the end "that the primary and secondary sentences [] be imposed consecutively, with the longest of the two (rather than the first of the two) being the base term and the shorter term being the consecutive subordinate term." (*People v. Baries* (1989) 209 Cal.App.3d 313, 320 [256 Cal.Rptr. 920], citing *People v. Jackson, supra*, 192 Cal.App.3d 209, 218-220; cf. *People v. Melchor* (1989) 211 Cal.App.3d 1485, 1490 [260 Cal.Rptr. 174].)

*C: Appropriate Remedy.*

■ Defendant argues that the trial court has exercised its discretion and pronounced its judgment in this matter, and that a reversal of defendant's judgment (rather than a remand for resentencing) is therefore called for to remedy the trial court's sentencing errors. In taking this position, defendant relies primarily on the case of *People v. Espinoza* (1983) 140 Cal.App.3d 564 [189 Cal.Rptr. 543]. The People have asked us to simply remand the matter for resentencing. Although the People have not cited any authority for its position on the question of remand, their position is supported by cases such as *People v. Burns* (1984) 158 Cal.App.3d 1178 [205 Cal.Rptr. 356] and *People v. Stevens* (1988) 205 Cal.App.3d 1452 [253 Cal.Rptr. 173].

Defendant's reliance on *Espinoza* (*supra*) is surprising in light of the fact that the reviewing court in that case did not reverse the judgment for sentencing error (as defendant calls upon us to do), but, rather, modified the judgment so as to directly correct the sentencing error. We are persuaded that that approach constitutes the best remedial approach in this case as well. A simple reversal of the judgment would be wholly inappropriate in light of the fact that defendant's convictions are themselves not in doubt

and should not be overturned by a reversal. Likewise, in light of the fact that the trial court has already fully exercised its sentencing discretion, there is no need for a remand for resentencing. In this case, unlike *Burns* and *Stevens, supra,* the trial court clearly exercised its discretion in weighing mitigating/aggravating sentencing factors, in selecting a base term, *and* in opting for the imposition of the least term of imprisonment allowed by law. That is, in this case, the trial court not only attempted to fully reason its way through the labyrinth of sentencing rules, but also implicitly articulated its view as to the appropriate "overall" sentence to be borne by defendant. There is nothing to be gained by remanding this matter to the trial court for resentencing. Given the trial court's previous exercise of sentencing discretion and the various constraints of the sentencing rules and statutes, we are in a position to impose (by modification) the one sentence that fully comports with all of the above.

### CONCLUSION

The judgment entered below must be modified so as to impose a proper sentence. Such a sentence will consist of:

(1) A mitigated base term of 16 months imposed with respect to count III. (This base term is consistent with the sentencing directives of §§ 1170 and 1170.1, and comports with the trial court's sound exercise of discretion in weighing the various mitigating and aggravating sentencing factors and in selecting the base term.)

(2) A subordinate, consecutive term of eight months imposed with respect to count V. (This subordinate term is consistent with the sentencing directives of § 1170.1, and the consecutive nature of the term comports with the directive contained in § 12022.1, subd. (e).)

(3) A section 12022.1 two-year "on bail" enhancement. (The imposition of a full two-year enhancement under § 12022.1 comports with our above analysis of that section.)

### DISPOSITION

The judgment entered below is modified by vacating the sentence therein imposed and imposing in its stead an aggregate sentence of four years, as follows: (1) A mitigated sixteen-month base term of imprisonment with regard to count III; (2) a subordinate, consecutive term of eight months with respect to count V; and (3) a full two-year "on bail" enhancement pursuant to section 12022.1. As so modified, the judgment is affirmed in full. This matter is remanded to the trial court with directions (a) that a

corrected abstract of judgment be prepared in accordance with the judgment modifications herein made and (b) that copies of the corrected abstract be forwarded to the appropriate correctional authorities.

Hollenhorst, Acting P. J., and McDaniel, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.