Filed 9/3/25  P. v. Chioino CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RICHARD LEWIS CHIOINO,<br><br>    Defendant and Appellant. | H051854<br>(Monterey County<br> Super. Ct. No. SC940419A) |

In 1994, defendant Richard Lewis Chioino pleaded no contest to one count of attempted premeditated murder (Pen. Code,[1] §§ 187, subd. (a), 664) and two counts of shooting a firearm at a person from a vehicle (§ 12034, subd. (c)) (shooting from a vehicle).  Chioino further admitted he personally used a firearm when he committed the attempted murder (§ 12022.5, subd. (a)) (firearm enhancement) and that he inflicted great bodily injury (§ 12022.7) (GBI enhancement).  The trial court sentenced Chioino to an aggregate determinate term of 12 years eight months in prison for the shooting from a vehicle offenses and the enhancements, concurrent with an indeterminate term of imprisonment for life with the possibility of parole.

---

[1] All further unspecified statutory references are to the Penal Code.

In 2023, the California Department of Corrections and Rehabilitation (CDCR) informed the trial court of a potential sentencing error regarding Chioino's concurrent determinate term. The CDCR noted that the law required Chioino to serve a consecutive three-year term for the firearm enhancement.

In response to the CDCR's letter, Chioino moved the trial court to recall his unauthorized sentence and resentence him and, further, requested that the court certify the matter to the juvenile court. Chioino also invited the court to recall his sentence and resentence him pursuant to section 1172.1.

In 2024, the trial court ruled the CDCR had not recommended a recall of Chioino's sentence and concluded the firearm enhancement must be served consecutively, not concurrently. The court corrected that error in Chioino's sentence but denied his requests for recall, full resentencing, and transfer of the matter to juvenile court.

On appeal, Chioino claims the trial court abused its discretion and violated his due process rights by denying his resentencing request. He further contends that the court lacked jurisdiction to correct the unauthorized portion of his sentence without recalling his entire sentence and resentencing him with the benefit of all ameliorative sentencing laws.

For the reasons explained below, we affirm the trial court's order correcting the unauthorized concurrent firearm enhancement but direct the trial court to amend the abstract of judgment to correct errors.

## I.  FACTS AND PROCEDURAL BACKGROUND

A. *Offenses, Charges, Plea, and Sentencing*

In November 1993, when Chioino was 16 years old, he shot a woman in the head.  Two days later, from a vehicle, Chioino shot a man in the throat and a woman in her hip.[2]

In August 1994, the Monterey County District Attorney filed an amended information charging Chioino with 15 offenses committed against five victims:  four counts of attempted murder (§§ 187, subd. (a), 664; counts 1, 4, 7 & 11), five counts of assault with a firearm (§ 245, subd. (a)(2); counts 2, 5, 8, 12 & 15), four counts of second degree robbery (§ 211; counts 3, 9, 13 & 14), and two counts of shooting from a vehicle (§ 12034, subd. (c)—counts 6 & 10).

The information additionally alleged enhancements for Chioino's use of a firearm (§ 12022.5, subd. (a) [counts 1–15]), infliction of great bodily injury (§ 12022.7 [counts 1, 2 & 4–13]), and infliction of great bodily injury by discharging a firearm from a vehicle (§ 12022.55 [counts 4–10]).

On August 30, 1994, Chioino pleaded no contest to count 1 (attempted premeditated murder) and counts 6 and 10 (shooting from a vehicle).  Chioino admitted the firearm enhancement attached to count 1 and the GBI enhancement attached to count 6.  In exchange for Chioino's plea, the district attorney agreed to dismiss all remaining counts and enhancements at sentencing.  Furthermore, the trial court retained discretion to determine whether Chioino would be housed in the California Youth Authority (CYA) or the CDCR.  The court remanded Chioino to the CYA for an evaluation and a report concerning his amenability to training and treatment offered by CYA.

---

[2] The probation officer's report describes additional crimes committed in November 1993 against two other people.

In November 1994, the CYA found that Chioino was "not amenable to the treatment and training offered by the [CYA] nor acceptable for housing there" pursuant to Welfare and Institutions Code section 1731.5, subdivision (c).

On December 22, 1994, the trial court held a sentencing hearing. The court committed Chioino to the CDCR with a request that Chioino "be afforded treatment at CYA at least to the age of 21 and further if [CYA] agree[d] to do so." The court also noted that "the [CDCR] would have the ultimate decision concerning that."

The trial court sentenced Chioino to life with the possibility of parole on count 1 (attempted premeditated murder[3]). It imposed a three-year term for the firearm enhancement attached to count 1. It imposed the middle term of five years on count 6 (shooting from a vehicle) plus a consecutive three-year term for the attached GBI enhancement, and a consecutive term of one year eight months on count 10 (shooting from a vehicle). The court further stated that the aggregate determinate term of 12 years eight months (which included the three-year enhancement attached to count 1) would run concurrently with the indeterminate term of life with possibility of parole "so that Richard Chioino would have an opportunity of parole at an earlier date."[4]

---

[3] Willful, deliberate, and premeditated attempted murder is punishable by imprisonment for life with the possibility of parole. (§ 664, subd. (a).) Section 3046 requires a defendant sentenced to life in prison to serve at least seven years before becoming eligible for release on parole. (§ 3046, subd. (a)(1); see *People v. Jefferson* (1999) 21 Cal.4th 86, 96–97.)

[4] Contrary to the original sentencing court's imposition of a concurrent term for the enhancement on count 1, at the time of Chioino's crime and sentencing, section 12022.5, subdivision (a) provided that a term imposed under that subdivision shall be "*in addition and consecutive to* the punishment prescribed for the felony or attempted felony of which [the

On April 5, 1995, after the CYA rejected Chioino, the trial court ordered that Chioino serve his sentence in state prison.

The original abstract of judgment did not indicate whether the trial court had ordered the determinate term served consecutively to or concurrently with the indeterminate term. On December 11, 2001, in response to a letter from the CDCR, the court ordered that an amended abstract of judgment be prepared by the court's clerk "reflecting that the determinate sentence be served concurrent to the indeterminate life sentence." (Capitalization omitted.) The associated amended abstract of judgment included an "X" in the box signifying that the indeterminate life term on count 1 is to run concurrently with the determinate term.

B. *CDCR's 2023 Letter and Chioino's Requests for Recall and Resentencing*

On October 5, 2023, the trial court received a letter from a "Correctional Case Records Analyst" at the CDCR indicating that there might be an error in the abstract of judgment and/or corresponding minute order regarding Chioino's sentence (hereafter, letter or CDCR's letter). The letter noted that the sentencing court had ordered the aggregate determinate term of 12 years eight months to be served concurrently, but that term included a three-year term imposed for a firearm enhancement which must be served consecutively (§ 12022.5, subd. (a)). The letter further stated that "[w]hen notified by the [CDCR] that an illegal sentence exists, the trial court is entitled to reconsider all sentencing choices," citing *People v. Hill* (1986) 185

defendant] has been convicted." (Stats. 1993, ch. 611, § 31.5; Stats. 1995, ch. 377, § 9, italics added.) Current section 12022.5, subdivision (a) similarly provides that "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison."

Cal.App.3d 831 (*Hill*).[5]  The CDCR's letter made no reference to section 1172.1, nor did it explicitly recommend that Chioino's sentence be recalled.

On December 26, 2023, Chioino, through appointed counsel, filed a motion for recall of his "illegal sentence" and resentencing and asked the trial court to certify the case to the juvenile court under Proposition 57.[6]  Chioino's counsel asserted that the CDCR's letter "reconveyed jurisdiction" to the trial court and "triggered a process" for recall and resentencing under section

---

[5] In *Hill*, the Court of Appeal explained that "[w]hen a case is remanded for resentencing by an appellate court, the trial court is entitled to consider the entire sentencing scheme.  Not limited to merely striking illegal portions, the trial court may reconsider all sentencing choices.  [Citations.]  This rule is justified because an aggregate prison term is not a series of separate independent terms, but one term made up of interdependent components.  The invalidity of one component infects the entire scheme." (*Hill*, *supra*, 185 Cal.App.3d at p. 834.)  The *Hill* court further concluded there was "no reason why this reasoning should not apply where . . . the Department of Corrections rather than the Court of Appeal notifies the trial court of an illegality in the sentence.  The trial court is entitled to rethink the entire sentence to achieve its original and presumably unchanged goal.  Furthermore, there is no contradiction between viewing an aggregate sentence as a whole and the language of section 1170, subdivision (d), which permits resentencing." (*Ibid*.)

[6] Proposition 57 (which took effect in 2016) provides that a juvenile may not be tried as an adult unless the juvenile court has conducted a transfer hearing and determined that the juvenile should be transferred from juvenile court to adult criminal court.  (Welf. & Inst. Code, § 707, subd. (a)(1); see *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303 (*Lara*); *People v. Castillero* (2019) 33 Cal.App.5th 393, 398.)  In *Lara*, our Supreme Court held that the prohibition on prosecutors charging juveniles with crimes directly in adult court applied to all such charged juveniles whose judgment was not final at the time Proposition 57 was enacted.  (*Lara*, at pp. 303–304.)  More recently, in *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla*), the court concluded that Proposition 57 "applies during resentencing when a criminal court sentence imposed on a juvenile offender before the initiative's passage has since been vacated." (*Id*. at p. 158.)

1172.1. To this pleading, counsel attached, inter alia, information regarding Chioino's in-prison programming and his release plans.

In January 2024,[7] Chioino's counsel filed supplemental information, pursuant to section 1172.1, subdivision (b)(2), regarding whether Chioino posed an unreasonable risk of danger to public safety. The information included a transcript of Chioino's November 2023 parole suitability hearing, documentation concerning Chioino's efforts at rehabilitation over the preceding decade, and Chioino's parole plan. Counsel asserted that "Chioino has made vast strides and changes while in prison" and "while he may have used a controlled substance in prison over the last few years, that is not indicative of someone who is an unreasonable risk of committing a super strike as defined in [section] 1170.18."

On January 30, the district attorney responded to the CDCR's letter and Chioino's filings. The district attorney contended that the CDCR's letter was not a recommendation for recall and resentencing under section 1172.1. The district attorney further asserted that Chioino's sentence had been corrected by the trial court in December 2001 and did not require any further correction.

On February 1, Chioino's counsel filed an invitation for the trial court to recall his sentence pursuant to section 1172.1 (invitation) and a reply to the district attorney's response.[8] Counsel noted that section 1170 had changed since Chioino's 1994 sentencing with respect to the imposition of a

---

[7] Unless otherwise indicated, all dates were in 2024.

[8] As of January 1, 2024, section 1172.1 allows the trial court, on its own motion, to recall and resentence a defendant "at any time" if the sentencing laws applicable "at the time of original sentencing [we]re subsequently changed by new statutory authority or case law." (§ 1172.1, subd. (a)(1); Stats. 2023, ch. 795, § 1.5.)

7

middle term sentence and now includes a presumption of a lower term sentence for a youth like Chioino. Counsel urged the court to "accept the invitation from CDCR or on its own motion under [section] 1172.1" "to exercise [its] discretion to ameliorate a long sentence." Additionally, counsel reiterated that Chioino's sentence was unauthorized, and the court should correct his illegal sentence.

C. *Hearing on Chioino's Sentence*

On February 14, the trial court held a hearing regarding Chioino's sentence (February 14 hearing). The court found that the CDCR's letter did not recommend a recall and resentencing under section 1172.1 and thus "did not provide a jurisdictional basis for modification under [section] 1172.1." The court further noted that under section 1172.1, subdivision (c), it is not it is not required to respond to Chioino's invitation for relief pursuant to that section. The court added, "So I don't think the court has jurisdiction to engage in a full resentencing under [section] 1172.1." The court cited *People v. Magana* (2021) 63 Cal.App.5th 1120 (*Magana*) in support of its finding.[9]

The trial court found that the original sentencing court stated an illegal sentence when it ordered the three-year term for the firearm enhancement on count 1 to run concurrently with the indeterminate life term imposed on count 1. The court described the required correction to Chioino's original sentence as "ensuring that the three-year [firearm] enhancement is clearly reflected in the minute order to be consecutive to the life term in [c]ount 1."

---

[9] In *Magana*, a different panel of this court stated that "because the CDCR did not recommend a recall [in its letter notifying the trial court of a clerical error in the abstract of judgment], the trial court lacked authority to recall defendant's sentence" (*Magana, supra,* 63 Cal.App.5th at p. 1125) and "the court's order correcting the abstract did not affect the finality of the judgment." (*Id.* at p. 1126.)

The court explained the "practical effect" of the correction "is that [Chioino]'s minimum eligible parole date is not seven years under [section] 3046 . . ., but would be 10 years. It has no effect on [Chioino]'s maximum possible sentence which is life. [¶] That 10-year minimum eligible parole period would then run concurrently with a nine-year, eight month determinate sentence, and that's of no actual consequence to [Chioino] since that 10-year period came and went almost 20 years ago." In turn, the court concluded that a full resentencing was currently unnecessary. The court instead ordered the sentencing minute order "amended to reflect the [three]-year [firearm] enhancement is to run consecutive to the life sentence on [c]ount 1, and that [c]ount 1 is to run concurrent to [c]ount 6 and [c]ount 10."

The trial court additionally concluded, "To the extent that I do have discretion to consider and review [Chioino]'s sentence I decline that. Based on what I have seen I don't think that would be in the interest of justice."

In accordance with the trial court's order correcting the firearm enhancement in Chioino's sentence, the court's clerk issued a minute order stating a nunc pro tunc correction to the original December 22, 1994 sentencing minute order: "As to [c]ount 1; serve an additional and consecutive term of [three] [y]ears for enhancement pursuant to [section] 12022.5."

Chioino appealed from the February 14 "[d]enial of [section] 1172.1 [and] CDCR [l]etter."

## II. DISCUSSION

Chioino raises two claims of error. In his first claim, he contends the trial court violated his due process rights and abused its discretion in failing to fully resentence him. He asserts the court had jurisdiction to grant his request for resentencing under section 1172.1 and the court's order denying

9

his request is appealable because it affected his substantial rights. Citing *People v. Codinha* (2023) 92 Cal.App.5th 976 (*Codinha*), Chioino further asserts that given the existence of his unauthorized sentence, the court had jurisdiction to fully resentence him. He argues that the court abused its discretion and violated due process when it "erroneously concluded it did not have jurisdiction to resentence" him, "dismissively indicated that if it did have jurisdiction, it was not in the interest of justice to resentence" him, and "failed to comply with" section 1172.1, which requires the court "to consider postconviction factors and recall a sentence when the defendant no longer poses an unreasonable risk of danger to public safety."

In his second claim of error, Chioino contends that "[i]n correcting [his] sentence pursuant to the CDCR's letter identifying the illegal sentence, [he] was entitled to resentencing under all new sentencing laws which would necessitate transferring this case to juvenile court." He claims "the court necessarily recalled the sentence" when it corrected the judicial error that occurred at his original sentencing proceeding.

The Attorney General replies that Chioino's claims of error lack merit. Additionally, the Attorney General asserts that because the correction of Chioino's sentence did not occur under section 1172.1, that section is inapplicable and Chioino has no right to appeal the trial court's denial of his invitation under section 1172.1.[10]

---

[10] The Attorney General makes no argument that we should dismiss this appeal because the trial court's order correcting Chioino's sentence is unappealable. Under the present circumstances, we conclude that the order correcting Chioino's sentence is itself appealable. (See *Codinha, supra,* 92 Cal.App.5th at p. 983; *People v. Arias* (2020) 52 Cal.App.5th 213, 220, fn. 7; *People v. Jordan* (2018) 21 Cal.App.5th 1136, 1140; cf. *Magana, supra,* 63 Cal.App.5th at p. 1128 [concluding that where the trial court had no jurisdiction to grant defendant's motion for a resentencing hearing under

A. *Legal Principles*

1. <u>Recall and Resentencing Under Section 1172.1</u>

" 'The right to appeal is statutory only, and a party may not appeal a trial court's judgment, order or ruling unless such is expressly made appealable by statute.' [Citation.]  Section 1237, subdivision (b) authorizes criminal defendants to appeal '[f]rom any order made after judgment, affecting the substantial rights of the party.' " (*People v. Roy* (2025) 110 Cal.App.5th 991, 995 (*Roy*).)

"Prior to 2024, former section 1172.1 permitted a trial court to recall the sentence of a committed defendant and resentence him or her in only two limited circumstances.  First, the court could recall and resentence on its own motion 'within 120 days of the date of commitment.'  (Former § 1172.1, subd. (a)(1).)  Second, the court could recall and resentence 'at any time upon the recommendation' of certain prison and prosecuting authorities, such as the Secretary of the Department of Corrections and Rehabilitation (the Secretary) or the district attorney.  (*Ibid.*)  The statute did not expressly permit defendants to request relief themselves.  [¶]  Under this version of the statute, the consensus view was that an order denying a defendant's request for relief did not affect a defendant's substantial rights and was thus not appealable." (*Roy*, *supra*, 110 Cal.App.5th at p. 996.)

"Assembly Bill No. 600, effective January 1, 2024, amended section 1172.1 in several relevant respects.  As amended, section 1172.1, subdivision (a)(1) now permits a trial court to recall and resentence a defendant 'on its own motion . . . *at any time* if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or

---

former section 1170, subdivision (d)(1), "the order denying that motion did not affect defendant's substantial rights and was not an appealable order"].)

11

case law.' (Italics added.) Assembly Bill No. 600 also added section 1172.1, subdivision (c), which specifically provides that '[a] defendant is not entitled to file a petition seeking relief from the court under this section. If a defendant requests consideration for relief under this section, the court is not required to respond.' " (*Roy*, *supra*, 110 Cal.App.5th at p. 997.)

In *Roy*, "the trial court entered an order stating that it 'declines to make its own motion for recall and resentencing' under section 1172.1." (*Roy*, *supra*, 110 Cal.App.5th at p. 1001.) The appellate court "conclude[d] that this postjudgment order did not affect defendant's substantial rights and thus is not appealable under section 1237, subdivision (b)." (*Ibid*.; accord *People v. Hodge* (2024) 107 Cal.App.5th 985, 999 (*Hodge*).)

Similarly, in *People v. Faustinos* (2025) 109 Cal.App.5th 687 (*Faustinos*), the Court of Appeal concluded "there is no appellate jurisdiction over an order declining to act on a defendant's unauthorized section 1172.1 petition, even though a court may initiate a resentencing on its own motion." (*Id*. at p. 697.) The *Faustinos* court further rejected an argument by the defendant that the trial court's order—which included a statement that the court " '[did] not have jurisdiction to consider [the defendant's] motion' " (*id*. at p. 693)—"may have indicated that the court erroneously believed that it lacked the authority to act on its own motion, which renders the order appealable." (*Id*. at p. 697.) The *Faustinos* court reasoned, "we do not think that the [trial] court can transform a nonappealable order (stating that it would not act on an unauthorized motion) into an appealable one by addressing a matter that it needed not address (its jurisdiction to act on its own), even if it was wrong about that matter." (*Id*. at p. 698.)

12

2. <u>Correction of an Unauthorized Sentence</u>

" 'Under the general common law rule, a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced.' [Citation.] An exception is an unauthorized sentence, which may be corrected 'even after execution of the sentence has begun.' [Citation.] A sentence is ' "unauthorized" where it could not lawfully be imposed under any circumstance in the particular case' [citation], and it 'is subject to being set aside judicially.' " (*People v. Boyd* (2024) 103 Cal.App.5th 56, 65 (*Boyd*); see *Codinha, supra,* 92 Cal.App.5th at pp. 988–990.)

"A trial court that imposes a sentence unauthorized by law retains jurisdiction (or has inherent power) to correct the sentence at any time the error comes to its attention, even if execution of the sentence has commenced or the judgment imposing the sentence has become final and correction requires imposition of a more severe sentence, provided the error is apparent from the face of the record." (*Codinha, supra,* 92 Cal.App.5th at p. 990; see also *id.* at p. 991; but see *People v. King* (2022) 77 Cal.App.5th 629, 641–642 [holding that "the unauthorized sentence doctrine does not itself create jurisdiction for a trial court to rule on an incarcerated defendant's motion to correct an alleged illegal sentence after the conviction is final and after the execution of the sentence has begun"]; *Boyd, supra,* 103 Cal.App.5th at pp. 66–69, 71–72 [declining to follow *Codinha* and following *King* but treating the appeal as petition for writ of habeas corpus]; *People v. Hernandez* (2024) 103 Cal.App.5th 1111, 1123–1124 [declining to follow *Codinha* and dismissing an appeal for lack of jurisdiction]; *People v. Singleton* (Aug. 20, 2025, B336504) ___ Cal.App.5th ___ [2025 WL 2408769, 8–9] [declining to follow *Codinha,* dismissing the appeal for lack of jurisdiction, and deeming

13

defendant's request for a vacatur of his newly increased sentence as a petition for writ of habeas corpus].[11])

B. *Standard of Review*

We review de novo whether a trial court had jurisdiction to rule on a defendant's motion and whether a trial court's order is appealable. (See *Day v. Collingwood* (2006) 144 Cal.App.4th 1116, 1123; *Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 762, 768.)

"In general, we review a trial court's sentencing decisions for abuse of discretion. 'An abuse of discretion is found where the court "relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." [Citation.]' [Citation.] ' "A failure to exercise discretion may also constitute an abuse of discretion." ' " (*People v. Gonzalez* (2024) 107 Cal.App.5th 312, 323; see also *People v. E.M.* (2022) 85 Cal.App.5th 1075, 1082 [applying the abuse of discretion standard of review to a trial court's denial of recall]; accord *People v. Mendez* (2021) 69 Cal.App.5th 347, 353 (*Mendez*).)

" 'To prove an abuse of discretion, " [t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives,

---

[11] Regarding the apparent split in authority, the *Codinha* court observed: "Given the apparent frequency with which the [CDCR] sends a letter to a trial court notifying it of an unauthorized sentence and the inconsistency in the case law concerning the court's jurisdiction to modify a sentence once execution has begun or the judgment imposing the sentence has become final, it would be helpful to the lower courts for the Supreme Court definitively to decide the jurisdictional issue." (*Codinha, supra*, 92 Cal.App.5th at p. 993.) We agree.

and its discretionary determination to impose a particular sentence will not be set aside on review.' " [Citation.] To meet this burden, the defendant must "affirmatively demonstrate that the trial court misunderstood its sentencing discretion." ' [Citation.] ' "Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record." ' " (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 988.)

C. *Analysis*

Regarding the trial court's decision to deny Chioino relief under section 1172.1, we agree with the Attorney General that that aspect of the court's February 14 ruling is not appealable. The court correctly decided that the CDCR's letter—which was authored by a case records analyst and did not mention section 1172.1 or sentence recall—was not a recommendation by the Secretary of CDCR for recall of Chioino's sentence pursuant to section 1172.1. (See *Codinha*, *supra*, 92 Cal.App.5th at p. 987; *Magana*, *supra*, 63 Cal.App.5th at p. 1125; see also *People v. Humphrey* (2020) 44 Cal.App.5th 371, 373, 378; cf. *Hill*, *supra*, 185 Cal.App.3d at pp. 833–834 [noting that the CDCR "recommended recall and resentencing"].) Hence, the CDCR's letter itself did not provide a jurisdictional basis under section 1172.1 to recall Chioino's sentence and resentence him. (See *Codinha*, at p. 988.)

Furthermore, to the extent Chioino contends the trial court erroneously believed it lacked jurisdiction to exercise its own motion authority to recall his sentence under section 1172.1 subdivision (a)(1), we reject that contention as unsupported by the record. At the February 14 hearing, the court

reviewed the statutory language with counsel for the parties and acknowledged that the current version of section 1172.1 provided it authority to act "on the court's own motion." Likewise, regarding jurisdiction, Chioino's defense counsel explained that, in addition to the CDCR's letter which "reconveys jurisdiction" and the illegal sentence "which the court should correct," the defense "invited the court to exercise its own discretion and recall the sentence." The court responded that it "[u]nderstood" defense counsel's position and further noted that under section 1172.1 the "court may" respond to a defendant's request for relief but is "not required" to respond. Later, when the court stated its ruling "in sum," the court relied on section 1172.1, subdivision (c) to decline Chioino's invitation to exercise its own motion authority under section 1172.1, subdivision (a)(1). In turn, the court said it had no jurisdiction under section 1172.1 to fully resentence Chioino, as he requested.

On this record, we conclude the trial court understood that it had the authority to act on its own motion to recall Chioino's sentence under section 1172.1, subdivision (a)(1) and was not jurisdictionally barred from doing so. (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 398 [" ' "[A] trial court is presumed to have been aware of and followed the applicable law." ' "]; *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 ["Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error."].) Rather than failing to act on its own motion because it believed it lacked any jurisdiction to do so, the court instead declined Chioino's invitation to make its own motion to recall his sentence and resentence him. Because the court declined to exercise its own motion authority (and the CDCR's letter otherwise did not recommend recall under

16

section 1172.1), the court did not exercise its authority under section 1172.1. Given these circumstances, the court's failure to accept Chioino's invitation does not amount to error under section 1172.1 or an appealable ruling. (See *Roy, supra,* 110 Cal.App.5th at pp. 998–999; *Hodge, supra,* 107 Cal.App.5th at pp. 998–999; *Faustinos, supra,* 109 Cal.App.5th at pp. 696–697.) Hence, we have no appellate jurisdiction over the section 1172.1 component of the court's February 14 ruling. (See *Faustinos,* at p. 697; see also *Roy,* at p. 1001; *Hodge,* at p. 999.)

Turning to Chioino's claims that the trial court erred by not fully resentencing him when it addressed the illegality in his sentence, we are not persuaded that reversal is appropriate on this record.

There is no dispute that in 1994, the trial court erroneously imposed a concurrent three-year term for the firearm enhancement on count 1. Section 12022.5, subdivision (a) required that that enhancement be imposed consecutively. In addition, the trial court had no discretion to strike the firearm enhancement (see *People v. Thomas* (1992) 4 Cal.4th 206, 212–213 [concluding the Legislature's 1989 amendment to section 1170.1, subdivision (h), deleting section 12022.5 was intended to divest the courts of their statutory authority to strike firearm use enhancements under both section 1170.1, subdivision (h) and section 1385]) or to stay it.[12] (See *People v. Ross* (1994) 28 Cal.App.4th 1151, 1155–1159 (*Ross*) [concluding the trial court had no authority to stay execution of a section 12022.5, subdivision (a) firearm enhancement under section 654 even though the firearm use was the means for committing voluntary manslaughter].) Moreover, in 2024, the court had

_____

[12] Chioino made no argument in the trial court or in his appellate briefing that, at the time of his 1994 sentencing, the court could have struck the punishment for the firearm enhancement.

17

jurisdiction to correct Chioino's sentence in response to the CDCR's letter and, in fact, acted under that jurisdiction. (See *Codinha*, *supra*, 92 Cal.App.5th at p. 990.) The central issue here is whether the court properly decided that "under the unauthorized sentencing rules a full resentencing is not required" and that it could decline to exercise any discretion it had to fully review Chioino's sentence.

The decision of the Court of Appeal in *Boyd* supports that a trial court may correct an illegal portion of a sentence without fully resentencing a defendant. In *Boyd*, the appellate court agreed that the defendant's sentence was unauthorized as to the calculation of his presentence credits but rejected the contention "that this warrants vacating his entire sentence, which a full resentencing anticipates." (*Boyd*, *supra*, 103 Cal.App.5th at p. 73.) The *Boyd* court explained, "That some part of a sentence is unauthorized does not necessarily mean that the entire sentence (or even part of the sentence) must be vacated." (*Id*, at p. 72; cf. *People v. Coddington* (2023) 96 Cal.App.5th 562, 568, italics omitted [stating that when a sentence is recalled, " 'the resentencing court has jurisdiction to modify every aspect of the sentence, and not just the portion subjected to the recall' "]; *Padilla*, *supra*, 13 Cal.5th at p. 161 ["When [defendant]'s sentence was vacated, the trial court regained the jurisdiction and duty to consider what punishment was appropriate for him."].)

Chioino's erroneous concurrent firearm enhancement amounts to a legal error apparent on the face of the sentencing record and, like the error in presentence credits in *Boyd*, was a nondiscretionary component of the sentence. Once the original sentencing court imposed the punishment on the firearm enhancement, it lacked the authority to do so concurrently. Thus, the correction of the firearm enhancement from running concurrently to

18

consecutively itself does not demand a full resentencing. (See *Ross*, *supra*, 28 Cal.App.4th at p. 1160.)[13] Furthermore, as the trial court explained, correcting the firearm enhancement's term from three years concurrent to three years consecutive had no current "practical" or "actual effect" on Chioino's sentence because the 10-year minimum period for his parole eligibility had run years ago and the life maximum did not change. Thus, at the time of correction in 2024, the unauthorized component of Chioino's sentence did not fundamentally implicate the sentencing scheme, as Chioino was long past his initial parole eligibility date and it did not affect his maximum sentence. (See *People v. Stevens* (1988) 205 Cal.App.3d 1452, 1456–1457.)

Under these circumstances, we conclude the trial court appropriately corrected the unauthorized portion of Chioino's sentence, that correction did not amount to a recall of Chioino's sentence, and the court was not required by any law to recall or vacate Chioino's sentence and fully resentence him. (See *Boyd*, *supra*, 103 Cal.App.5th at pp. 72–74.)

Moreover, we are not persuaded the trial court abused its discretion or deprived Chioino of due process in declining to fully resentence him. Contrary to Chioino's assertion, the provisions of section 1172.1 that govern recall and resentencing were inapposite for the reasons discussed *ante*.

For these reasons, we decide the trial court did not err when it declined to recall Chioino's sentence and fully resentence him.

Finally, although not raised by either Chioino or the Attorney General, the appellate record includes an abstract of judgment that is erroneous in

---

[13] Chioino did not argue in the hearing conducted in 2024 that the trial court should have stricken the punishment on the firearm enhancement.

several respects.  (See docket No. SC940419A, Judicial Council of Cal. form CR-292 with form CR-290(A) attached [dated Aug. 27, 2024; filed Aug. 28, 2024].)

(1) In section No. 1 of form CR-292, for count 1 (attempted murder), the box under the word concurrent should be checked.

(2) In section No. 1 of form CR-292, the box beside the phrase "[a]dditional counts are listed on attachment" should not be checked and no pages for any additional indeterminate term should be attached.  In other words, form CR-290(A) should not be used in this case.

(3) In section No. 7 of form CR-292, the box beside the phrase "[a]dditional determinate term (see CR-290)" should be checked.

(4) The determinate terms imposed on count 6 and count 10 and the consecutive three-year term imposed for the enhancement attached to count 6 (§ 12022.7) should be listed on the abstract of judgment form for a determinate sentence (i.e., form CR-290).

We direct the trial court to amend the abstract of judgment to correct these errors.

### III.  DISPOSITION

We affirm the trial court's February 14, 2024 order.  The trial court is directed to prepare an amended abstract of judgment to correct the following errors:  (1) In section No. 1 of form CR-292, for count 1 (attempted murder), the box under the word concurrent should be checked.  (2) In section No. 1 of form CR-292, the box beside the phrase "[a]dditional counts are listed on attachment" should not be checked and no pages for any additional indeterminate term should be attached.  (3) In section No. 7 of form CR-292, the box beside the phrase "[a]dditional determinate term (see CR-290)" should be checked.  (4) The determinate terms imposed on count 6 and count

10 and the consecutive three-year term imposed for the enhancement attached to count 6 (§ 12022.7) should be listed on the abstract of judgment form for a determinate sentence (i.e., form CR-290). The trial court clerk is directed to send a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

_____
Danner, Acting P. J.

WE CONCUR:


_____
Wilson, J.


_____
Bromberg, J.


**H051854**
***People v. Chioino***